Slip Op. 09-56

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────────┐
│ AD HOC UTILITIES GROUP,                  │
│                                          │
│              Plaintiff,                  │
│                                          │
│               v.                         │
│                                          │                Before: Pogue, Judge
│ UNITED STATES,                           │
│                                          │                Court No. 06-00229
│              Defendant,                  │
│                                          │
│             - and -                      │
│                                          │
│ USEC INCORPORATED, et al.                │
│                                          │
│             Defendant-Intervenors.       │
└─────────────────────────────────────────┘
```

## OPINION

[Defendant's and Defendant-Intervenors' motions to dismiss granted.]

June 15, 2009

Pillsbury Winthrop Shaw Pittman LLP (Nancy A. Fischer, Joshua D. Fitzhugh, Christine J. Sohar, Kemba T. Eneas and Stephan E. Becker) for Plaintiff Ad Hoc Utilities Group.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Stephen C. Tosini), and, of counsel, David W. Richardson, Office of Chief Counsel for Import Administration, Department of Commerce for Defendant United States.

Steptoe & Johnson LLP (Eric C. Emerson, Alexandra E.P. Baj, Sheldon E. Hochberg, Richard O. Cunningham, Sohini Chatterjee, Thomas J. Trendl and Wentong Zheng) for Defendant-Intervenors USEC Inc. and United States Enrichment Corp.

Akin Gump Strauss Hauer & Feld LLP (Valerie A. Slater, Margaret C. Marsh, Bernd G. Janzen and Lisa W. Ross) for Defendant-Intervenors Power Resources, Inc. and Crowe Butte Resources, Inc.

**Pogue, Judge:** The issue before the court is whether the

Plaintiff, a group of American utility companies that obtain and use enriched uranium from Russia, has standing to challenge the Department of Commerce's ("Commerce") decision not to terminate its antidumping duty investigation of that uranium.  Because the utility companies individually do not each qualify either as producers or importers of the subject uranium and because the companies as a group do not qualify as a trade or business association a majority of the members of which are producers or importers, the court concludes that the group lacks standing and therefore dismisses this action.

## BACKGROUND

The current dispute has its roots in Commerce's 1991 initiation of an antidumping duty investigation of imports of uranium from the U.S.S.R. See Uranium from the Union of Soviet Socialist Republics, 56 Fed. Reg. 63,711 (Dep't Commerce Dec. 5, 1991) (initiation of antidumping duty investigation).  Following the dissolution of the U.S.S.R., Commerce continued its investigation and preliminarily concluded that uranium imports from the newly-independent states of Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine and Uzbekistan were being "dumped," i.e.,sold in the United States at less than fair value. See Uranium from Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine and Uzbekistan, 57 Fed. Reg. 23,380 (Dep't Commerce June 3, 1992) (preliminary determinations of sales at less than fair value); Uranium from

Armenia, Azerbaijan, Byelarus, Georgia, Moldova and Turkmenistan, 57 Fed. Reg. 23,380 (Dep't Commerce June 3, 1992) (preliminary determinations of sales at not less than fair value).  Faced with these preliminary determinations, Russian and American representatives entered into negotiations concerning the trade of nuclear materials.  These negotiations led to a set of agreements circumscribing the origin, amount and means for importation of Russian low enriched uranium ("LEU") into the United States, and a further Agreement Between the Government of the United States of America and the Government of the Russian Federation Concerning the Disposition of Highly Enriched Uranium Extracted from Nuclear Weapons (the "HEU Agreement").  As part of these agreements, Commerce undertook to suspend -- which is not to terminate[1] -- its antidumping duty investigation.  See Uranium from Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine and Uzbekistan, 57 Fed. Reg. 49,220 (Dep't Commerce Oct. 30, 1992) (notice of suspension of investigations and amendment of preliminary determinations).  Further, also in accordance with the agreements and related legislation, Defendant-Intervenor USEC, Inc. ("USEC"), as the "United States Executive Agent," was designated as the only entity in the U.S. with authority to purchase enriched uranium from

---

[1] Generally, suspension may be pursuant to agreements restricting the importation of merchandise subject to investigation.  See Section 734 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673c.  Further citations to the Act, unless otherwise stated, are to the 2006 version of the United States Code.

Russia, trade in such goods being generally restricted. See also USEC Privatization Act of 1996 §§ 3102-15, as amended, 42 U.S.C. §§ 2297h-1 to 2297h-13.   Consequently, during the period of time relevant here, American utility companies obtained LEU of Russian origin by contracting with USEC,[2] even though the utility companies considered their purchase agreements to be contracts for uranium enrichment services, and not sales of LEU subject to investigation under the antidumping laws.

In related actions, Commerce also investigated sales of uranium products from other countries, and in one of these actions, USEC Inc. v. United States, 27 CIT 489, 259 F. Supp. 2d 1310 (2003) ("USEC I"), this Court held that, because of Commerce's "tolling regulation"[3] and prior practice,[4] Commerce's decision to

_____

[2] USEC, the parent entity of the United States Enrichment Corp., also has U.S. uranium-enrichment facilities, and sells its enrichment services to U.S. utility companies.

[3] The "tolling regulation," now repealed, see Import Administration, Withdrawal of Regulations Governing the Treatment of Subcontractors ("Tolling" Operations), 73 Fed. Reg. 16,517 (Dep't Commerce Mar. 28, 2008), stated that Commerce "will not consider a toller or subcontractor to be a manufacturer or producer [of merchandise under investigation for dumping]  where the toller or subcontractor does not acquire ownership, and does not control the relevant sale, of the subject merchandise or foreign like product." 19 C.F.R. § 351.401(h) (2007).

[4] In USEC I, the court noted that:

under the regulation, Commerce will not find tollers or subcontractors to be producers where such toller or subcontractor does not acquire ownership and does not control the relevant sale of the subject merchandise or foreign like product.

Court No. 06-229                                                    Page 5

treat "SWU contracts" for uranium enrichment[5] as sales of enriched

uranium subject to antidumping investigation -- rather than as

"tolling" or subcontracting arrangements -- was unsupported by

substantial evidence, as there was no evidence that the enricher

ever took ownership of the goods. 27 CIT at 506, 259 F. Supp. 2d at

1326.[6]  The Federal Circuit affirmed this holding, concluding that

the "SWU contracts" were contracts for services rather than for

goods. See Eurodif S.A. v. United States, 411 F.3d 1355, 1364 (Fed.

Cir. 2005) ("Eurodif I").

        Relying on Eurodif I, and pursuant to 19 U.S.C. §

_____

USEC I, 27 CIT at 497, 259 F. Supp. 2d at 1318.

    [5] "SWU contracts" are sales transactions structured so that
a utility contracts for the enrichment of a certain amount of
converted uranium (called "feed uranium"), which it supplies.
The enricher provides enriched uranium to the utility, in
exchange for a comparable amount of feed uranium and cash payment
for the amount of separative work units ("SWU") necessary to
enrich the feed uranium.  Although the enriched uranium is
typically not the same uranium as the feed uranium provided for a
given transaction, it is contractually treated as such.

    [6] Thus, in USEC I the Court held that:

        if the text of 19 C.F.R. § 351.401(h) and Commerce's
        prior decisions were applied to the evidence on this
        record, the SWU contracts would be treated as contracts
        for the performance of services, and the enrichers
        would be treated as tollers and the utilities as the
        producers of LEU. Here, however, Commerce determined
        that the enrichers were the producers . . . .
        Commerce's determination that enrichers are producers
        and not tollers is against the weight of the evidence
        on the record and inconsistent with both the agency's
        regulations and its prior decisions involving tolling
        services . . . .

27 CIT at 502, 506, 259 F. Supp. 2d at 1323, 1326.

1516(a)(2)(A),[7] Plaintiff Ad Hoc Utility Group ("AHUG"),[8] in 2006,
filed this action to challenge Commerce's decision -- in its second
"sunset" review of the suspension of its antidumping duty
investigation of uranium from Russia -- that in the absence of the
Russian-American agreements, continued dumping of enriched uranium
was likely. See Uranium From the Russian Federation, 71 Fed. Reg.
32,517 (Dep't Commerce June 6, 2006) (final results of five-year
sunset review of suspended antidumping duty investigation) ("Second
Sunset Review") and the accompanying Issues and Decision
Memorandum, A-821-802, Sunset Review (June 6, 2006)
http://ia.ita.doc.gov/frn/summary/RUSSIA/E6-8758-1.pdf (last
visited May 18, 2009) ("Decision Mem.").[9]

Addressing the issue of AHUG's standing to participate in the
Second Sunset Review, Commerce treated AHUG as an "industrial user"
of subject merchandise pursuant to 19 C.F.R. § 351.312,[10] and

---

[7] 19 U.S.C. § 1516(a)(2)(A) provides that "[a]s used in this
section, the term 'interested party' [entitled to seek judicial
review] means a person who is--
    (A) a manufacturer, producer, or wholesaler in the United
    States...."

[8] AHUG is a group of American utility companies.

[9] In the administrative proceedings for the Second Sunset
Review, and relying on USEC I and Eurodif I, AHUG argued that
Commerce's inclusion of SWU contracts, in its sunset review
analysis -- as a basis for its decision that termination of its
investigation would be likely to lead to a continuance or
recurrence of dumping -- was contrary to law. See 19 U.S.C.
§1675(c)(1)(A).

[10] "In an antidumping or countervailing duty proceeding
under title VII of the Act and this part, an industrial user of

concluded that, in that administrative proceeding, AHUG did not have standing as an "interested party" that is a "producer" of LEU. Decision Mem. 2 n.1; cf. USEC I, 27 CIT at 512-13, 259 F. Supp. 2d at 1331 (granting AHUG's motion to intervene as of right as an "interested party" as possible "toll" "producers" of subject merchandise, and remanding to Commerce to resolve whether AHUG members are "producers"); USEC Inc. v. United States, 27 CIT 1419, 1433, 281 F. Supp. 2d 1334, 1346 (2003) ("USEC II") (affirming Commerce's practice of declining to apply the tolling regulation, and finding domestic utilities were thus not foreign producers of uranium, in the industry support context), aff'd in part, Eurodif I, 411 F.3d at 1361.

The court consolidated this case with Court No. 06-00228, Techsnabexport v. United States,[11] and remanded the consolidated case to Commerce to reconsider its conclusions in light of Eurodif I. Techsnabexport v. United States, 31 CIT __, 515 F. Supp. 2d 1363 (2007) ("Tenex").[12]   The court found that Commerce's denial of

---

the subject merchandise or a representative consumer organization, as described in section 777(h) of the Act [19 U.S.C. § 1677f(h)], may submit relevant factual information and written argument to the Department . . . concerning dumping or a countervailing subsidy. . . ." 19 C.F.R. § 351.312(b) (2008).

[11] Court No. 06-00228 was a case brought by Techsnabexport, the Russian executive agent responsible for the export of uranium and uranium enrichment services from Russia. After Commerce's determination had been remanded, on March 12, 2008, the cases were severed and the court granted Techsnabexport's motion to dismiss pre-consolidated Court No. 06-00228.

[12] Familiarity with the court's prior decision is presumed.

Court No. 06-229                                              Page 8

"interested party" status did not reflect consideration of the nature of the transactions at issue here, and that therefore Commerce's determination did not reflect "consider[ation of] an important aspect of the problem." <u>Tenex</u>, 31 CIT at __, 515 F. Supp. 2d at 1364-65 n.4 (quoting <u>Motor Vehicles Mfrs. Ass'n v. State Farm Mut.</u>, 463 U.S. 29, 43 (1983)). Accordingly, the court allowed Commerce the opportunity to review its position regarding AHUG's status in these proceedings. <u>Id.</u>[13]

      After reconsidering its position on remand, Commerce issued its remand results. <u>See</u> <u>Final Results on Redetermination Pursuant to Court Remand</u>, A-821-802, Suspension Agreement (Dec. 21, 2007), <u>available at</u> http://ia.ita.doc.gov/remands/07-143.pdf (last visited June 11, 2009) ("<u>Remand Results</u>").   In these <u>Remand Results</u>, Commerce determined that contracts pursuant to the HEU Agreement did not meet the definition of "SWU contracts" determined in <u>Eurodif I</u> to be contracts for services. <u>Id.</u> 29-32.  Thus, Commerce did not exclude these transactions from its likelihood determination. <u>Id.</u>  Further, Commerce, in its volume of future imports analysis, relied on a public report from the International Trade Commission ("ITC"). <u>See</u> <u>Uranium from Russia</u>, USITC Pub. No. 3872, Inv. No. 731-TA-539-C (Second Review) (Aug. 2006).  Commerce

---

      [13] The court deferred ruling on AHUG's standing in this judicial review proceeding, finding this to be one of those rare cases in which the questions regarding jurisdiction were intertwined with the merits of the case, and that further information would be necessary.

noted the ITC report's mention of certain "contingent contracts" that the Russian uranium industry had entered into with American utilities.[14]   In light of ITC's reliance on these "contingent contracts," AHUG now also claims that many of its members have "entered into negotiations and signed agreements [i.e., contingent contracts] with Techsnabexport . . . or its agent for the purchase of Russian EUP [i.e., enriched uranium product] or enrichment services," and that these contracts confer upon the utility companies entering into them status as importers of the subject merchandise. Supplemental Br. of the Ad Hoc Utilities Group on the Relevance and Effect of the Supreme Court's Eurodif Decision 5.

In its Remand Results, Commerce also reconsidered AHUG's status as an "interested party," but decided that AHUG did not so qualify. Remand Results 49-52.   First, Commerce determined that AHUG members were not "producers," given that AHUG members "do not

---

[14] Commerce noted from the report:

the Russian uranium industry had had discussions with U.S. nuclear utilities about sales in the event the suspended investigation was terminated; in fact, the ITC reported that the Russian uranium industry had entered into a number of contingent contracts with U.S. utilities.  Specifically, the ITC's report states that 16 out of 29 responding uranium purchasers advised that they had solicited or had been solicited to negotiate contingent contracts for Russian-sourced uranium during the period 2000-2005.  The ITC notes that these contingent contracts covered: conversion to $UF_6$, natural uranium hexafluoride, enrichment services, and the purchase of enriched uranium product, or EUP.

Remand Results 36 (footnote omitted).

contract directly with the Russian LEU producer . . . . [,] can only receive Russian LEU [] from USEC itself, which USEC purchased from Tenex[,] . . . . [and] have no control over the Russian producer's production activities." <u>Id.</u> 50-51.   In addition, Commerce noted that "title to the Russian LEU from HEU does transfer from Tenex to USEC, belying AHUG's claim that it is the only entity that owns the LEU as a whole." <u>Id.</u> 51.   Second, Commerce found that, because "USEC is the only U.S. importer of all Russian LEU down-blended from HEU," AHUG members could not qualify as "importers." <u>Id.</u>

Meanwhile, and subsequent to Commerce's remand determination at issue here, following <u>Eurodif I</u>, Defendants and Defendant-Intervenors petitioned the Supreme Court for certiorari.   This court then stayed the proceedings in this case pending the final resolution of the <u>Eurodif</u> matter.   Subsequently, in January of 2009, the Supreme Court decided <u>United States v. Eurodif S.A.</u>, ___U.S.___, 129 S.Ct. 878 (2009) ("<u>Eurodif II</u>"), which reversed <u>USEC I</u> and <u>Eurodif I</u>.   The Supreme Court concluded that Commerce may reasonably treat SWU transactions as "mixed cash-commodity" sales of goods, i.e., purchases of LEU with cash and a certain amount of feed uranium, <u>see id.</u> at  887 & n.8, as the ownership of the LEU is most reasonably viewed as lying with the uranium enricher prior to delivery. <u>Id.</u> at 888-89 n.9.

Now, as a result of <u>Eurodif II</u>, the parties in this matter are once again before the court.   Specifically, the Defendants have

moved, pursuant to USCIT R. 12(b)(1), to dismiss AHUG's complaint for lack of subject matter jurisdiction, asserting that AHUG fails to qualify as an interested party authorized to challenge Commerce's review decision. As noted above, prior to Eurodif II, AHUG insisted that its members have standing as foreign "producers" of LEU, and, more recently, has raised its members' standing as "importers" of LEU. See 28 U.S.C. § 2631(c); 19 U.S.C. § 1677(9)(A).

## Standard of Review

Plaintiff, as the party seeking to invoke the Court's jurisdiction, bears the burden to establish its standing to bring its action. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); Raines v. Byrd, 521 U.S. 811, 818 (1997); AutoAlliance Int'l, Inc. v. United States, 29 CIT 1082, 1088, 398 F. Supp. 2d 1326, 1332 (2005). Thus, AHUG must demonstrate that its members satisfy the statutory standing requirements. See 28 U.S.C. § 2631(c);[15] 19 U.S.C. § 1677(9).[16]

---

[15] "A civil action contesting a determination listed in section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a] may be commenced in the Court of International Trade by any interested party who was a party to the proceeding in connection with which the matter arose." 28 U.S.C. § 2631(c) (emphasis added).

[16] The meaning of the term "interested party," as used in 28 U.S.C. § 2631(c), is found in 19 U.S.C. § 1677(9). See 28 U.S.C. § 2631(k)(1) ("In this section. . . 'interested party' has the meaning given such term in section 771(9) of the Tariff Act of 1930 [19 U.S.C. § 1677(9)].")). 19 U.S.C. § 1677(9)(A) defines "interested party" as "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of

At the same time, in deciding whether the Plaintiff has standing, the court is not bound by Commerce's determinations of "interested party" status in the administrative proceedings below. See Zenith Radio Corp. v. United States, 5 CIT 155, 156 (1983) ("The decision of the administrative agency to accept the participation of [a plaintiff], even if done in terms of recognizing them as 'interested parties,' cannot control the Court's understanding of a matter primarily related to the invocation of its powers of judicial review.").

## Analysis

### I. Pursuant to Eurodif II, AHUG Members Do Not Have Standing as "Producers"

In light of Eurodif II, AHUG does not urge, in its most recently filed brief, that its members have standing as LEU "producers." See AHUG Supplemental Br. 5-9. The court agrees.

After Commerce's revocation of its tolling regulation and the Supreme Court's Eurodif II decision, it is clear that Commerce may reasonably treat SWU transactions as sales of goods owned by the enricher. As AHUG' members, as opposed to the enricher, may no longer be considered the owners of the enriched LEU at issue, AHUG may no longer claim to have standing as a producer.

### II. AHUG Members Have Not Established Standing as "Importers"

_____

which are producers, exporters, or importers of such merchandise."

As noted above, 28 U.S.C. § 2631(c) requires that, in order to obtain judicial review, a party both be "interested" and have participated in the administrative proceedings below. <u>See also</u> 19 U.S.C. § 1516a(a)(2)(A) ("an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and . . . a complaint, . . . contesting any factual findings or legal conclusions upon which the determination is based.").

AHUG undisputedly participated in the proceedings leading up to the <u>Second Sunset Review</u> and the <u>Remand Results</u>.  However, under any of the statutory definitions of "importer" -- including either as a group of individual companies or, arguably, as a trade or business association -- AHUG does not meet the standing requirements stated by section 2631(c).

The court has previously concluded that 19 U.S.C. § 1677(9)(A), which section 2631(c) applies -- because it requires a majority of the members of an association or group to be producers, exporters or importers -- precludes standing on the part of a group with a majority of members that are not producers, exporter or importers.[17] <u>Am. Grape Growers Alliance for Fair Trade v. United</u>

---

[17] To conclude otherwise would render the majority requirement nugatory. <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) ("a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quoting <u>Mkt. Co. v. Hoffman</u>, 101 U.S. 112, 115 (1879))).  This result may seem

States, 7 CIT 389 (1984). Therefore, AHUG must either show that it would be considered a "trade or business association," id., or it must show that it is a "multiplied form of a single" importer. Id. at 389-90 (the latter is identified as "the unified appearance of those[,] who could appear separately[,] [for] administrative and judicial convenience"). The former requires only a majority of members, whereas the latter would require all members, to qualify as "importers" to gain standing, where no member appears individually. Cf. RSI (India) Pvt., Ltd. v. United States, 12 CIT 84, 86, 678 Fed. Supp. 304, 306 (1988) ("Congress has made an exception [from the requirement that all members satisfy standing requirements] only for importers when they are the majority of the members of a trade or business association").

In its briefing, AHUG has identified itself as a group of individual companies, stating that it is not a trade or business association and "has no legal existence or status separate from its members." Resp. of the Ad Hoc Utilities Group to the Court's Questions of Apr. 24, 200[9] ("AHUG Resp. to Apr. 2009 Questions") 2. As a consequence, AHUG must demonstrate that all of its members share the same qualities that qualify them for standing in the action before the court.

---

anomalous where it precludes standing for a group even though an
individual member of that group would have standing, had that
member appeared as a plaintiff on its own behalf.  Such a result
however is compelled by the majority requirement.

But according to AHUG's evidence presented here, far fewer than half of AHUG's member signed:

> agreements with the members or agents of members of the Russian uranium industry on the record before the Court in this proceeding under which the AHUG members would clearly be the importers of record. . . .

Id. 4-5. Although AHUG claims that "a number of AHUG members entered into negotiations with Russian uranium suppliers or their agents," id. 5, AHUG provides no specific number and refers only to the record in a similar case before this court, Court No. 06-300 (challenging the Second Sunset Review of the International Trade Commission's decision on material injury to domestic industry). AHUG itself concludes that its evidence demonstrates that far fewer than half of its members "would qualify as United States importers under 19 U.S.C. § 1677(9)(A)." AHUG Resp. to Apr. 2009 Questions 6.

AHUG's evidence, at best, shows that a small minority of utilities have fostered contingent contractual relationships with Russian enrichers or may have conducted "face to face meetings" with Russian enrichers to potentially contract. Id.; App. of Confidential R. Docs. Cited in the Ad Hoc Utilities Group's Initial Br. in Supp. of Rule 56.2 Mot. for J. Upon the Agency R., Tab G. It follows that even with a very broad interpretation of "importer," AHUG's evidence does not suffice to show to the court that all of its members are "importers."

In any event, even if AHUG were a "trade or business association," standing would still be lacking. According to AHUG's

revised corporate disclosure statement, AHUG includes nineteen utility companies. See Revised Disclosure of Corp. Affiliations and Financial Interest, Amended Attachment.[18]   Again, the evidence before the court identifies that only a small minority of members as potential importers.  A small minority does not a majority make, and will not give AHUG standing in this case. See Zenith Radio Corp., 5 CIT at 156-57; Special Commodity Group on Non-Rubber Footwear From Brazil, Am. Ass'n of Exps. & Imps. v. United States, 9 CIT 481, 483-84, 620 F. Supp. 719, 721-22 (1985);  Matsushita Elec. Indus. Co. v. United States, 2 CIT 254, 256-59, 529 F. Supp. 664, 667-69 (1981).

---

[18] The utility companies include: Arizona Public Service Co.; Constellation Energy Group, Inc.; Dominion Energy Kewaunee, Inc.; Dominion Nuclear Connecticut, Inc.; Duke Energy Carolinas, LLC; Entergy Services, Inc.; Exelon Corp.; Florida Power & Light Co.; FPL Energy Seabrook, LLC; Luminant (formerly TXU Generation Co.); Nebraska Public Power District; Pacific Gas & Electric Co.; PPL Susquehanna, LLC; Progress Energy Carolinas, Inc.; Progress Energy Florida, Inc.; Southern California Edison Co.; Southern Nuclear Operating Co.; Union Electric Co. (d/b/a AmerenUE); and Virginia Electric & Power Co.  In a more recent filing in this court, AHUG lists sixteen members - the above nineteen members less Florida Power & Light Co.; FPL Energy Seabrook, LLC; and Southern California Edison Co. See AHUG Resp. to Apr. 2009 Questions 3.  However, this discrepancy does not change the outcome in this case.

Court No. 06-229                                              Page 17

## **CONCLUSION**

For the foregoing reasons, the court GRANTS the Defendant's and Defendant-Intervenors' pending USCIT Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction.

Judgment will be entered accordingly.

                                              /s/ Donald C. Pogue
                                            Donald C. Pogue, Judge

Dated:      June 15, 2009
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────────────┐
│ AD HOC UTILITIES GROUP,                       │
│                                               │
│                 Plaintiff,                    │
│                                               │
│                    v.                         │
│                                               │
│ UNITED STATES,                                │
│                                               │
│                 Defendant,                    │
│                                               │
│                 - and -                       │
│                                               │
│ USEC INCORPORATED, et al.                     │
│                                               │
│                 Defendant-Intervenors.        │
└─────────────────────────────────────────────┘
```

Before: Pogue, Judge

Court No. 06-00229

## JUDGMENT

This action has been duly submitted for decision, and this Court, after due deliberation, has rendered a decision herein; now, in conformity with that decision, this action is hereby

DISMISSED for lack of subject matter jurisdiction.


 /s/ Donald C. Pogue
Donald C. Pogue, Judge

Dated:     June 15, 2009
           New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____       By: _____
                                              Deputy Clerk