Slip Op. 09-98

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AD HOC UTILITIES GROUP,<br><br>    Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>    - and -<br><br>USEC INCORPORATED, <u>et al.</u><br><br>    Defendant-Intervenors. | Before: Pogue, Judge<br><br>Court No. 06-00229 |

## <u>OPINION</u>

[Plaintiff's motion for rehearing denied.]

September 15, 2009

 <u>Pillsbury Winthrop Shaw Pittman LLP</u> (<u>Nancy A. Fischer</u> and <u>Joshua D. Fitzhugh</u>) for Plaintiff Ad Hoc Utilities Group.

 <u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Stephen C. Tosini</u>) for Defendant United States.

 <u>Steptoe & Johnson LLP</u> (<u>Eric C. Emerson</u>, <u>Alexandra E.P. Baj</u>, <u>Sheldon E. Hochberg</u>, <u>Richard O. Cunningham</u> and <u>Thomas J. Trendl</u>) for Defendant-Intervenors USEC Inc. and United States Enrichment Corp.

 <u>Akin Gump Strauss Hauer & Feld LLP</u> (<u>Valerie A. Slater</u>, <u>Margaret C. Marsh</u>, <u>Bernd G. Janzen</u> and <u>Lisa W. Ross</u>) for Defendant-Intervenors Power Resources, Inc. and Crowe Butte Resources, Inc.

 **Pogue, Judge:** Plaintiff in this case, Ad Hoc Utilities Group

("AHUG"), pursuant to USCIT Rule 59,[1] requests rehearing of the court's dismissal of Plaintiff's action for lack of standing. <u>See Ad Hoc Utils. Group v. United States</u>, Slip Op. 09-56, 2009 Ct. Intl. Trade LEXIS 60 (CIT June 15, 2009) ("<u>AHUG</u>").[2]  In <u>AHUG</u>, the issue presented was whether "a group of American utility companies that obtain and use enriched uranium from Russia" had standing "to challenge the Department of Commerce's ('Commerce') decision not to terminate its antidumping duty investigation of that uranium." <u>Id.</u> at *1-2.  The court dismissed AHUG's action "[b]ecause the utility companies <u>individually</u> d[id] not <u>each</u> qualify either as producers or importers of the subject uranium," <u>id.</u> at *2 (emphasis added), and, in the alternative, because the companies would, even if treated as a group, fail to "qualify as a trade or business association a majority of the members of which are producers or

---

[1] "The court may, on motion, grant a new trial or rehearing on all or some of the issues -- and to any party -- as follows: . . . (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." USCIT R. 59(a)(1).  Although the Rule references "nonjury trial[s]," subsection (B) has been expansively read by this Court to encompass "rehearing[s] of any matter[s] decided by the court without a jury," <u>NSK Corp. v. United States</u>, __ CIT __, __, 593 F. Supp. 2d 1355, 1362 (2008) (citation and internal quotation marks omitted), including this court's grant of Defendants' motion to dismiss for lack of standing. <u>See id.</u>; <u>see also</u> <u>Totes-Isotoner Corp. v. United States</u>, __ CIT __, __, 580 F. Supp. 2d 1371, 1373-74 (2008), <u>appeal docketed on other grounds</u>, No. 2009-1113 (Fed. Cir. Dec. 16, 2008); <u>Intercargo Ins. Co. v. United States</u>, 20 CIT 951, 951-52, 936 F. Supp. 1049, 1049-50 (1996), <u>aff'd</u>, 129 F.3d 135 (Fed. Cir. 1997) (per curiam) (mem.).

[2] Familiarity with the decision is presumed.  The history and context of this case is fully explained therein.

Court No. 06-229                                          Page 3

importers." Id.

As explained below, as AHUG was correctly decided, and no
individual utility company with standing is a plaintiff herein, the
court denies Plaintiff's motion.

**BACKGROUND**

**A. The Administrative Proceeding**

This dispute arose from AHUG's 2006 challenge to Commerce's
second "sunset" review of the suspension of the antidumping duty
investigation of uranium from Russia, pursuant to Uranium from
Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine, and
Uzbekistan, 57 Fed. Reg. 49,220 (Dep't Commerce Oct. 30, 1992)
(notice of suspension of investigations and amendment of
preliminary determinations). Commerce determined in its sunset
review that, in the absence of suspension, Russia would likely
continue dumping its enriched uranium in the U.S. market. See
Uranium From the Russian Federation, 71 Fed. Reg. 32,517 (Dep't
Commerce June 6, 2006) (final results of five-year sunset review of
suspended antidumping duty investigation) and the accompanying
Issues & Decision Memorandum, A-821-802, Sunset Review (May 30,
2006), Admin R. Pub. Doc. 48, available at
http://ia.ita.doc.gov/frn/summary/RUSSIA/E6-8758-1.pdf (last
visited Sept. 9, 2009). AHUG sought court review of Commerce's
determination.

Defendants United States and USEC moved the court to dismiss

the case for lack of standing, putting in play the issue of whether AHUG could qualify as an "interested party" with a statutory right to judicial review. See Section 516 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516(a)(2)(A).[3]  The court, however, consolidated this case with Court No. 06-00228, Techsnabexport v. United States, and remanded the consolidated case to Commerce. Techsnabexport v. United States, __ CIT __, 515 F. Supp. 2d 1363 (2007) ("Tenex").[4]  To assure consideration of all aspects of the standing issue, the court instructed that, on remand, Commerce review its denial, in the agency's initial proceedings, of "interested party" status to AHUG. __ CIT at __ n.4, 515 F. Supp. 2d at 1364-65 n.4.[5]

Commerce subsequently issued its remand results. See Final Results on Redetermination Pursuant to Court Remand Techsnabexport v. United States Cons. Court No. 06-00228, Slip Op. 07-143 (Sept. 26, 2007), A-821-802, Suspension Agreement (Dec. 21, 2007), Admin. R. Pub. Doc. [Techsnabexport v. United States] 20, available at

---

[3] Further citations to the Act, unless otherwise noted, are to the 2006 version of the U.S. Code.

[4] Familiarity with this decision is presumed.  The Tenex plaintiff's standing to seek review in 06-0028 was uncontested. The two cases were later severed, when, upon the request of the Tenex plaintiff, that case was dismissed.

[5] The court deferred ruling on AHUG's standing, finding this to be one of those rare cases in which the questions regarding jurisdiction were intertwined with the merits of the case, and that further information would be necessary.

Court No. 06-229                                              Page 5

http://ia.ita.doc.gov/remands/07-143.pdf (last visited Sept. 9,
2009) ("Remand Results"). Relevant to this litigation, Commerce,
in its volume of future imports analysis, relied on a public report
from the International Trade Commission ("ITC"). See <u>Uranium from
Russia</u>, USITC Pub. 3872, Inv. No. 731-TA-539-C (Second Review)
(Aug. 2006), <u>available at</u> 2006 ITC LEXIS 537. Commerce noted the
ITC report's mention of certain "contingent contracts" that the
Russian uranium industry had entered into with American utilities.
Remand Results 36-37. Despite the reference to these "contingent
contracts," Commerce once again denied AHUG status as an
"interested party." <u>Id.</u> 49-52. First, Commerce determined that
AHUG members were not "producers," given that AHUG members "do not
contract directly with the Russian [low-enriched uranium ("LEU")]
producer . . . . [,] can only receive Russian LEU[] from USEC
itself, which USEC purchased from Tenex[,] . . . . [and] have no
control over the Russian producer's production activities." <u>Id.</u> 50-
51. Furthermore, Commerce noted that "title to the Russian LEU
from HEU does transfer from Tenex to USEC, belying AHUG's claim
that it is the only entity that owns the LEU as a whole." <u>Id.</u> 51.
Second, Commerce found that, because "USEC is the only U.S.
importer of all Russian LEU down-blended from [high-enriched
uranium ("HEU")]," AHUG members could not qualify as "importers."
<u>Id.</u>

### B. The Court's Dismissal of AHUG's Complaint

Reviewing Commerce's remand results, the court considered the standing issue raised by Defendants United States' and USEC's motions, pursuant to USCIT R. 12(b)(1), to dismiss AHUG's complaint for lack of subject matter jurisdiction. See AHUG, 2009 Ct. Intl. Trade LEXIS 60, at *16-22. Defendants argued that AHUG fails to qualify as an interested party statutorily authorized to challenge Commerce's review decision. In response, AHUG argued that many of its members have "entered into negotiations and signed agreements [i.e., contingent contracts] with Techsnabexport . . . or its agent for the purchase of Russian [enriched uranium product ("EUP")] or enrichment services," and that the contracts confer upon the utility companies entering into them status as importers of the subject merchandise.[6] (Supplemental Br. of the Ad Hoc Utilities Group on the Relevance & Effect of Supreme Ct.'s Eurodif Decision ("AHUG Supplemental Br.") 5-6); see also 28 U.S.C. § 2631(c); 19 U.S.C. § 1677(9)(A).

The court agreed, in part, with the government and USEC and accordingly dismissed AHUG's complaint for lack of standing. In so doing, the court noted that 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(a)(2)(A) require that, in order to obtain judicial review, a

---

[6] AHUG abandoned its argument that it had standing as a "producer."

Court No. 06-229                                                    Page 7

party must be "interested" as defined by 19 U.S.C. § 1677(9).[7]

AHUG, 2009 Ct. Intl. Trade LEXIS 60, at *16-17.  After reviewing

the record and the filings before it, the court determined that

> under any of the statutory definitions of "importer" --
> including either as a group of individual companies or,
> arguably, as a trade or business association -- AHUG does
> not meet the standing requirements stated by section
> 2631(c).

Id. at *17.   The court reasoned that 19 U.S.C. § 1677(9)(A)

"precludes standing on the part of a group with a majority of

members that are not producers, exporter or importers," id.

(footnote omitted) (citing Am. Grape Growers Alliance for Fair

Trade v. United States, 7 CIT 389 (1984)), and, accordingly, the

court required AHUG to demonstrate either "that it would be

considered a 'trade or business association'" or "that it is a

'multiplied form of a single' importer." Id. at *17-18 (quoting Am.

---

[7] "A civil action contesting a determination listed in
section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a] may be
commenced in the Court of International Trade by any interested
party who was a party to the proceeding in connection with which
the matter arose." 28 U.S.C. § 2631(c).  The meaning of the term
"interested party," as used in 28 U.S.C. § 2631(c)(2000), is
found in 19 U.S.C. § 1677(9). See 28 U.S.C. § 2631(k)(1) ("In
this section . . . 'interested party' has the meaning given such
term in section 771(9) of the Tariff Act of 1930 [19 U.S.C. §
1677(9)]."). 19 U.S.C. § 1677(9) defines "interested party" as,
among other definitions not relevant to this proceeding, "a
foreign manufacturer, producer, or exporter, or the United States
importer, of subject merchandise or a trade or business
association a majority of the members of which are producers,
exporters, or importers of such merchandise." Id. § 1677(9)(A).

Grape Growers, 7 CIT at 389).[8]   "The former requires only a majority of members, whereas the latter would require all members, to qualify as 'importers' to gain standing, where no member appears individually." Id. at *18 (citing RSI (India) Pvt., Ltd. v. United States, 12 CIT 84, 86, 678 F. Supp. 304, 306 (1988)("Congress has made an exception [from the requirement that all members satisfy standing requirements] only for importers when they are the majority of the members of a trade or business association.")).

The court recognized that AHUG, in its briefing, identified itself as a group of individual companies, not a trade or business association, that "has no legal existence or status separate from its members." Id. at *19 (citation omitted).  Thus, AHUG would be required to demonstrate that "all of its members share the same qualities that qualify them for standing in the action before the court." Id. (emphasis added).  However, AHUG only presented evidence that "a number of AHUG members entered into negotiations with Russian uranium suppliers or their agents." Id. (citation omitted).  Indeed, "AHUG itself concludes that its evidence demonstrates that far fewer than half of its members 'would qualify as United States importers under 19 U.S.C. § 1677(9)(A).'" Id. at

---

[8] A "multiplied form of a single exporter" is identified as "the unified appearance of those[,] who could appear separately[,] [for] administrative and judicial convenience." Am. Grape Growers, 7 CIT at 389.

Court No. 06-229                                                    Page 9

*20 (citations omitted).[9]

Furthermore, the court went on to note that "even if AHUG were
a 'trade or business association,' standing would still be
lacking," as "[a] small minority [of interested parties within a
group] does not a majority make, and will not give AHUG standing in
this case." Id. at 20-21.[10]

**C. AHUG's Motion for Rehearing**

In moving for reconsideration of the dismissal, AHUG first
argues that the court's treatment of it in a "unitary nature is a
manifest error of fact." (Mot. of Certain Members of the Ad Hoc
Utils. Group for Reh'g Pursuant to USCIT Rule 59 ("AHUG Mot.") 2.)
According to AHUG, it is

> not a trade association, business group, or any other
> organized, unitary entity [but is rather] an ad hoc
> collection of independent utilities that seek to
> facilitate their efforts in this proceeding by acting
> under a common name. [AHUG] was intended to facilitate
> the litigation process and conserve judicial resources,
> by avoiding the need for separate filings by each utility
> . . . and providing a convenient short-hand reference for
> the utilities as a whole. That cooperation did not
> create a unitary entity capable of replacing the
> independent participation of AHUG's members.

---

[9] The court took no position on whether individual utility
companies that entered into contingent contracts, had they sought
review in their own right, would constitute "interested parties"
under the statute. Id.

[10] Unrelated to this motion, the court additionally held
that, in light of United States v. Eurodif S.A., ___ U.S.___, 129
S. Ct. 878 (2009), "AHUG'[s] members . . . may n[ot] be
considered the owners of the enriched LEU at issue" and thus
"AHUG may no longer claim to have standing as a producer." AHUG,
2009 U.S. Dist. LEXIS 60, at *16.

Court No. 06-229                                                  Page 10

(Id. 2-3.)  AHUG asserts that "AHUG's members, including those with
standing in this proceeding, have appeared as plaintiffs on their
own behalf." (Id. 3 (emphasis in original).)  In support of this
statement, AHUG notes that its Summons, Complaint and all other
briefs and papers were "filed on behalf of AHUG and its individual
members." (Id. & 4 n.2.)  Moreover, AHUG maintains that "[o]n the
Form 13, Disclosure of Corporate Affiliations and Financial
Interest, AHUG reported its utility members as individual corporate
parties . . . [and] did not report itself as a trade association.
. . ." (Id. 3.)  For these reasons, AHUG contends, those cases
cited by the court in its opinion apply only to "the standing of
formal groups, not the standing of individual members of ad hoc
groups who participate in their individual capacities." (Id. 4-5
(citing Am. Grape Growers, 7 CIT at 389; RSI (India) Pvt., 12 CIT
at 86, 678 F. Supp. at 306).)[11]

### STANDARD OF REVIEW

The court will grant a rehearing "only in limited
circumstances," such as for "1) an error or irregularity, 2) a
serious evidentiary flaw, 3) the discovery of new evidence which
even a diligent party could not have discovered in time, or 4) an
accident, unpredictable surprise or unavoidable mistake which

---

[11] Although, at the time of the court's decision, AHUG was
composed of at least sixteen members, AHUG's current motion is
filed "by [three utility companies which] qualify as interested
parties because they entered into one or more 'contingent
contracts' with Russian suppliers." (Id. 1 n.1.)

impaired a party's ability to adequately present its case." Target Stores v. United States, __ CIT __, __, 471 F. Supp. 2d 1344, 1347 (2007) (citing Kerr-McGee Chem. Corp. v. United States, 14 CIT 582, 583 (1990)).  "The court will not grant such a motion merely to give a losing party another chance to re-litigate the case or present arguments it previously raised." Totes-Isotoner Corp. v. United States, __ CIT __, __, 580 F. Supp. 2d 1371, 1374 (2008) (citation and quotation marks omitted), appeal docketed on other grounds, No. 2009-1113 (Fed. Cir. Dec. 16, 2008). Accordingly, the purpose of rehearing or reconsideration is "to direct the Court's attention to some material matter of law or fact which it has overlooked in deciding a case, and which, had it been given consideration, would probably have brought about a different result." Target Stores, __ CIT at __, 471 F. Supp. 2d at 1349 (quoting Agro Dutch Indus. Ltd. v. United States, 29 CIT 250, 254 (2005)); Former Employees of BMC Software, Inc. v. United States Sec'y of Labor, Slip Op. 08-102, 2008 Ct. Intl. Trade LEXIS 102, at *4-6 (CIT Sept. 26, 2008).

AHUG's motion, by alleging "error" in the court's July 15 opinion, invokes only the first ground for rehearing.  Applying this standard, the court will address each of AHUG's arguments in turn.[12]

_____

[12] As the court recognized in its prior order, a plaintiff, as the party seeking to invoke the Court's jurisdiction, bears the burden to establish its standing to bring its action. See

Court No. 06-229                                              Page 12

**DISCUSSION**

## I. Change in the Specification of AHUG Members Does Not Provide Grounds for Rehearing

AHUG first seeks rehearing of the court's ruling by moving--
rather than on behalf of <u>all</u> sixteen of its utility company
members--only on behalf of three of the utility companies that
allegedly entered into contingent contracts with the Russian
uranium industry. (<u>See</u> AHUG Mot. 1 n.1.)  However, a change in the
makeup of AHUG does not provide adequate grounds for rehearing.
The court will only grant rehearing in the event of "error" of fact
or "discovery of new evidence" that AHUG could not have discovered
prior to the court's opinion. <u>See</u> <u>Target Stores</u>, __ CIT at __, 471
F. Supp. 2d at 1347.  AHUG does not claim that the court committed
error as to the number or names of AHUG members at the time of the
court's decision, and, indeed, it could not, as the court relied
upon the very Form 13 Disclosure Statement that AHUG contends makes
AHUG members individual parties to this litigation. <u>See</u> <u>AHUG</u>, 2009
Ct. Intl. Trade LEXIS 60, at *20-22 & 20 n.18.

Further, AHUG may not obtain relief through rehearing where it
is merely attempting to advance arguments it could have readily
asserted before. <u>See</u> <u>United States v. Matthews</u>, __ CIT __, __, 580

_____

<u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 342 (2006); <u>Raines</u>
<u>v. Byrd</u>, 521 U.S. 811, 818 (1997).  Therefore, AHUG has the
burden to demonstrate that its members satisfy the statutory
standing requirements. <u>See</u> 28 U.S.C. § 2631(c); 19 U.S.C. §
1677(9).

Court No. 06-229                                    Page 13

F. Supp. 2d 1347, 1349 (2008), aff'd, No. 2009-1106, 2009 U.S.
App. LEXIS 16065 (Fed. Cir. July 22, 2009) (per curiam); see also
Waugh v. Williams Cos. Long Term Disability Plan, 323 F. App'x 681,
685 (10th Cir. 2009) (motion for rehearing properly denied when
movant was not seeking to correct manifest errors of law or present
newly discovered evidence, but "instead [was] attempting to advance
arguments she could have readily asserted before") (citation and
quotation marks omitted); Carroll v. Nakatani, 342 F.3d 934, 945
(9th Cir. 2003) (a motion for rehearing "may not be used to raise
arguments or present evidence for the first time when they could
reasonably have been raised earlier in the litigation") (citation
omitted); 12 James Wm. Moore et al., Moore's Federal Practice §
59.13[2][d][vii] (3d ed. 2009) ("Evidence that was available and
known during the trial, but that was not submitted to the court,
does not constitute sufficient grounds for a Rule 59 motion.")
(citation omitted).

## II. AHUG Members are not Individually "Plaintiffs" in this Litigation

Second, AHUG alleges that the court erred in categorizing AHUG as a group rather than considering all AHUG members as individual plaintiffs.[13]

The court disagrees.  According to the Rules, all parties to a civil action before the court must be properly identified in the caption of the initial pleading(s) in which they are named, i.e., the summons and complaint. USCIT R. 10(a);[14] see also Fed. R. Civ.

---

[13] The court notes that AHUG's position on rehearing seems inconsistent with a number of court filings in which it refers to AHUG as "Plaintiff." (See, e.g., AHUG Supplemental Br. 5 (AHUG is "plaintiff in this case"; Compl. 1 (referring to AHUG as "plaintiff" suing "on behalf of its members"; the members were not named as "plaintiffs").)

[14] USCIT R. 10(a) states that "[e]very pleading must have a caption with the court's name, a title[,] a court number, and a Rule 7(a) designation. The caption of the summons and the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."  USCIT Rule 10 corresponds to Federal Rule of Civil Procedure 10.
Congressional intent behind Rule 10, which discounts claims where the complaint fails to sufficiently identify a party, is rooted in concern for providing notice to the parties in an action and protecting the public interest. See Doe v. Rostker, 89 F.R.D. 158, 160 (N.D. Cal. 1981)(holding the purpose behind Fed. R. Civ. P. 10 "is not solely one of administrative convenience [but] serves to apprise the parties of their opponents, and it protects the public's legitimate interest in knowing all the facts and events surrounding court proceedings").
Although AHUG claims that three utility companies constitute plaintiffs in this action, AHUG wishes the names of these purported plaintiff companies to remain anonymous.  Federal district courts may, under appropriate circumstances, allow Plaintiffs to proceed under anonymous names. See EW v. N.Y. Blood Ctr., 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (listing four factors as which counsel in favor of allowing plaintiff to be designated

Court No. 06-229                                                    Page 15

P. 10(a).  The summons and complaint in this action named a single
plaintiff: AHUG.  Although in subsequent pleadings all parties need
not be fully named, in the original complaint, the names of all
parties must be included. USCIT R. 10(a); Yousefi v. Lockheed
Martin Corp., 70 F. Supp. 2d 1061, 1064-65 (C.D. Cal. 1999)
(striking 134 putative class members, who moved, together with
existing class-action plaintiffs, as self-named "Lockheed Martin
Group," to consolidate the actions; the court held that "[a]side
from Yousefi, Kane, and Kretchmeyer, the [Lockheed Martin Group's]
members are not named plaintiffs in any of the suits" and
accordingly "the 134 other members of the Lockheed Plaintiffs
Group, which are not party to the three suits subject to
consolidation, cannot move to consolidate the actions"), aff'd, 126
F. App'x 785 (9th Cir. 2005). See also Mitchell v. Maynard, 80 F.3d
1433, 1441 (10th Cir. 1996) (affirming refusal to enter judgment
against party not named in complaint but referred to in brief);
Zocaras v. Castro, 465 F.3d 479, 483-85 (11th Cir. 2006) (affirming
dismissal a case where the plaintiff prosecuted an action under
alias without revealing his true name in the pleadings pursuant to
Fed. R. Civ. P. 10).

A plaintiff, as a party who initiates a civil action by filing
an initial complaint, must identify itself in the caption. 2 Moore

_____

"John Doe").  However, the court notes that neither AHUG nor any
of the three utility companies have asked for "John Doe Corp."
designation in this case.

et al., supra, § 10.02[2][a]-[c]. Plaintiff AHUG drafted its
complaint, and thus the court relies on the complaint's caption to
discern the plaintiff in the suit. See Williams v. Bradshaw, 459
F.3d 846, 849 (8th Cir. 2006)(holding that the caption "is entitled
to considerable weight when determining who the plaintiffs to a
suit are since plaintiffs draft complaints").   The individual
utilities do not individually appear in the Summon's or the
Complaint's captions, and said utilities are not individually
parties or plaintiffs. See Yousefi, 70 F. Supp. 2d at 1064-65.

Nor does the fact that the corporate entities are listed in
the Form 13 disclosure statement change the effect of Rule 10. Cf.
Maynard, 80 F.3d at 1441; Klingler v. Yamaha Motor Corp., 738 F.
Supp. 898, 910 (E.D. Pa. 1990) (striking down claims where the
defendants were not named in the caption but only referred to in
the body of the complaint).   A disclosure statement, though a
required supplemental filing, is not a complaint or summons. See
USCIT R. 3(i) ("The disclosure statement must be filed with the
entry of appearance (or with the summons if no separate notice of
appearance is required)"); see also Fed. R. Civ. P. 7.1(b)(1).[15]

---

[15] Plaintiff argues that "AHUG" is a short hand method of
referring to the "plaintiffs," because submitting filings for
each corporate entity would be wasteful. (See AHUG Mot. 3.)
Rules 10(a) does allow for the use of short-form for "other
pleadings." USCIT R. 10(a) ("the title of other pleadings after
naming the first party on each side may refer generally to other
parties."); see also Adkins v. Safeway, Inc., 985 F.2d 1101, 1102
(D.C. Cir. 1993).  However, while the use of shorthand may be
appropriate for "other pleadings," again, the rule requires all

As a consequence, the individual AHUG members do not constitute plaintiffs in this action.

## III. AHUG Does Not Satisfy Section 1677(9)

Third, AHUG attempts to argue that, given its particular nature as an "ad hoc" group--brought together for efficiency of litigation only--rather than a "formal" group, case law and statutory standing requirements for groups do not apply to it. AHUG provides no support for this proposed special treatment of "ad hoc" groups, and the court can find no support for this distinction.  As it noted in its earlier opinion, the court has recognized groups such as AHUG as a "multiplied form of a single" importer that is "identified as 'the unified appearance of those[,] who could appear separately[,] [for] administrative and judicial convenience." AHUG, 2009 Ct. Intl. Trade LEXIS 60, at *18 (quoting Am. Grape Growers, 7 CIT at 389-90).  For such an appearance, as opposed to trade or business associations--which are subject to a statutory exception[16]--all members of the group constituting a

_____

parties to be named in the caption of the complaint.  AHUG's claim of conserving resources stands in direct contrast to the intent behind USCIT Rule 10(a).

[16] In accordance with 19 U.S.C. § 1677(9)(A), a "trade or business association" may qualify as an "interested party" if "a majority of the members [] are producers, exporters, or importers of such merchandise."  This requirement has been construed to exclude groups in which only a small minority of members qualify as interested parties. See AHUG, 2009 Ct. Intl. Trade LEXIS 60, at *20-21 (citing Zenith Radio Corp. v. United States, 5 CIT 155, 156-57 (1983); Special Commodity Group on Non-Rubber Footwear From Braz., Am. Ass'n of Exps. & Imps. v. United States, 9 CIT

"multiplied form of a single" importer must "qualify as 'importers'
to gain standing, where no member appears [as a plaintiff]
individually." Id. As was noted by the court, this was clearly not
the case here, as only a small minority of AHUG members claimed to
have such "importer" status.

AHUG mistakenly argues that the court committed an error of
fact by basing its opinion on the assumption that AHUG was a "trade
or business association." To the contrary. The court recognized
that AHUG repudiated this designation. See id. at *19 ("AHUG has
identified itself as a group of individual companies, stating that
it is not a trade or business association . . . ."). Out of an
abundance of caution, and in fairness to AHUG, however, the court
noted that, even should AHUG be considered a trade or business
association, it did not meet the majority requirement. Contrary to
AHUG's assertions, the court did not base its decision on this
factual assumption and thus whether or not AHUG qualifies as a
trade or business association was not a "material matter of law or
fact which [the court] has overlooked in deciding a case, and
which, had it been given consideration, would probably have brought
about a different result." Target Stores v. United States, __ CIT
at __, 471 F. Supp. 2d at 1349 (citation and quotation marks
omitted).

---

481, 483-84, 620 F. Supp. 719, 721-22 (1985); Matsushita Elec.
Indus. Co. v. United States, 2 CIT 254, 256-59, 529 F. Supp. 664,
667-69 (1981)).

## IV. Amendment of Pleadings

The court will permit a party to amend errors and omissions in the naming of parties "when justice so requires." USCIT R. 15(a)(2). See Fakhri v. United States, __ CIT __, __, 507 F. Supp. 2d 1305, 1315-16 (2007).[17]   However, such amendments are only allowed "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

Here AHUG's delay was undue.  AHUG, for the first time, asked for leave to amend its complaint in its reply brief on rehearing, well over a year after it first raised its argument for standing as

---

[17] AHUG also argues that USCIT R. 17(a) requires the court to provide it the opportunity to amend its pleadings.  Rule 17 is inapplicable to this case, as the court has not dismissed the action on the grounds that AHUG failed to prosecute its case in the name of the "real party in interest."  Rather, AHUG, a group of utilities, correctly appeared as the "real party in interest" in this suit even if statutory standing is lacking.  Cf. Mitchell Food Prods. Inc. v. United States, 43 F. App'x 369, 369-70 (Fed. Cir. 2002) (distinguishing between the concepts of standing and "real party in interest"); Phibro Energy, Inc. v. Brown, 19 CIT 663, 669 n.11, 886 F. Supp. 863, 869 n.11 (1995) ("To determine whether a plaintiff is a real party in interest, the Court must determine whether the plaintiff is the entity which under substantive law has the right sought to be enforced.") (citation and quotation marks omitted).

an importer.[18]  While mere delay is not a reason to deny leave,

where the delay is "'undue'", such delay requires limiting the

opportunity to amend. Datascope Corp. v. SMEC, Inc., 962 F.2d 1043,

1045 (Fed. Cir. 1992) (citation omitted); Tenneco Resins, Inc. v.

Reeves Bros., Inc., 752 F.2d 630, 634-35 (Fed. Cir. 1985).

Here, the court finds that AHUG's "undue delay" weighs against

permitting amendment.  First, AHUG was fully on notice that this

issue was in play and yet failed, until now, to ask for leave to

amend its complaint.  This case was filed in 2006, at which point

AHUG asserted standing as a "producer" pursuant to this court's

holding in USEC Inc. v. United States.[19]  Furthermore, "importer"

---

[18] AHUG first referenced its standing as an "importer" in
its March 31, 2008 brief to the court:

> a number of AHUG members qualify as importer of record
> under [the contingent contracts]. . . . Because its
> members qualify as interested parties under 19 U.S.C. §
> 1677(9), AHUG respectfully requests that the Court find
> that AHUG has standing before the Court under 28 U.S.C.
> § 2631(c).

(Resp. of Ad Hoc Utils. Group to the Court's Req. for
Supplemental Info. on Contingent Contracts Relied Upon by
Commerce in its Remand Results 8-9.)

[19] In USEC Inc. v. United States, 27 CIT 489, 259 F. Supp.
2d 1310 (2003), this Court held that Commerce's decision to treat
"SWU contracts" for uranium enrichment as sales of enriched
uranium subject to antidumping investigation -- rather than as
"tolling" or subcontracting arrangements -- was unsupported by
substantial evidence, as there was no evidence that the enricher
ever took ownership of the goods. 27 CIT at 506, 259 F. Supp. 2d
at 1326.  AHUG relied USEC to assert its ownership of the uranium
through the enrichment process and thus standing as a "producer"
of the uranium.  However, as the court previously noted:

Court No. 06-229                                                    Page 21

standing was at issue almost one month before the U.S. Supreme Court granted *certiorari* in <u>Eurodif</u> and almost three months before the court stayed this matter pending the Supreme Court's decision. <u>See</u> <u>United States v. Eurodif S.A.</u>, 128 S. Ct. 2054 (April 21, 2008). Subsequently, importer standing remained at issue for almost five months following <u>Eurodif</u>'s issuance and the dissolution of the stay. During this latter time period, the court gave AHUG ample opportunity to explore the "importer" standing issue through repeated briefings to the court as well as specifically-worded questions from the court. <u>See</u> <u>Te-Moak Bands of W. Shoshone Indians of Nev. v. United States</u>, 948 F.2d 1258, 1262-63 (Fed. Cir. 1991) ("At some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive.") (quoting <u>Daves v. Payless Cashways, Inc.</u>, 661 F.2d 1022, 1025 (5th Cir. Unit A Nov. 1981)); <u>id.</u> at 1261 ("A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend.") (quoting

---

      After Commerce's revocation of its tolling regulation and the Supreme Court's [<u>Eurodif</u>] decision, it is clear that Commerce may reasonably treat SWU transactions as sales of goods owned by the enricher. As AHUG'[s] members, as opposed to the enricher, may no longer be considered the owners of the enriched LEU at issue, AHUG may no longer claim to have standing as a producer.

<u>AHUG</u>, 2009 Ct. Intl. Trade LEXIS 60, at *16.

Carson v. Polley, 689 F.2d 562, 584 (5th Cir. 1982)).

Second, judgment has already issued in this case, and AHUG's motion to amend was not on file previous to the court's dismissal of the case and judgment thereon. See Summers v. Earth Island Inst., __ U.S. __, __, 129 S. Ct. 1142, 1153 (2009); Datascope, 962 F.2d at 1044-47. Compare Pinnacle Pigging Sys. v. Eliminator Pigging Sys. USA, Inc., 55 F. App'x 943, 945-46 (Fed. Cir. 2003) (per curiam); Phonometrics, Inc. v. Resinter N. Am. Corp., No. 97-1101, 1997 U.S. App. LEXIS 26574, at *1, 7 (Fed. Cir. Sept. 17, 1997). AHUG has only now, in a footnote to its reply on rehearing, mentioned pleading amendment.

Third, while the court will often grant leave to amend when "mere technical irregularities in the filing of procedural papers" exist, Zenith Elecs. Corp. v. United States, 988 F.2d 1573, 1580 (Fed. Cir. 1993) (citations omitted), the court views the omission of the individual companies rather as a "strategic" decision in litigation. See Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008); Strub v. Axon Corp., Nos. 97-1221 & 97-1222, 1998 U.S. App. LEXIS 20249, at *30 (Fed. Cir. Aug. 17, 1998). The omission of AHUG members as plaintiffs, and indeed, specifically the failure to drop AHUG members who would not qualify as importers, was not mere formality in pleading; AHUG itself recognizes that the AHUG members joined together to pool resources to facilitate the litigation in a cost-effective way.

Lastly, AHUG provides no compelling reason for its delay. See Engineered Prods. Co. v. Donaldson Co., 147 F. App'x 979, 987 (Fed. Cir. 2005) (applying Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989)); Te-Moak Bands, 948 F.2d at 1263 (collecting cases); Tenneco Resins, 752 F.2d at 634; Zhejiang Mach. Imp. & Exp. Corp. v. United States, 29 CIT 1266, 1271 (2005) ("a key element of the analysis is the excusability of any delay in raising the new issue") (citation omitted).

Accordingly, the court determines that "justice" does not require amendment here.[20]

---

[20] The court also observes that, pursuant to USCIT R. 21, "[p]arties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just." The U.S. Supreme Court has instructed that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989). USCIT R. 21 tracks the language in Fed. R. Civ. P. 21. However, even should Newman-Green be extended to allow AHUG to dispose of non-importer members after the court's entry of judgment, "[i]n applying Rule 21, the court is governed by the liberal amendment standards of Rule 15(a)." Insituform Techs., Inc. v. Cat Contr., Inc., 385 F.3d 1360, 1372 (Fed. Cir. 2004) (citation omitted). As explained above, AHUG does not merit Rule 15 amendment.

Court No. 06-229                                              Page 24

### **CONCLUSION**

Accordingly, upon consideration of AHUG's motion, the court does not find any error of law or fact sufficient to support rehearing of this matter.

The court accordingly DENIES AHUG's Motion.

It is SO ORDERED.


                                    _____/s/_____
                                    Donald C. Pogue, Judge


Dated: September 15, 2009
       New York, New York

## NOTICE OF ENTRY AND SERVICE


This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____     By: _____
                                                        Deputy Clerk